Dear Ms. Rogers:
On behalf of the Escambia County Board of County Commissioners, you have asked for my opinion on substantially the following questions:
1. Is Escambia County entitled to receive crash reports from law enforcement agencies at the scene of a motor vehicle accident pursuant to Escambia County's motor vehicle accident cost recovery fee ordinance?
2. If the answer to Question One is no, may Escambia County require access to the information contained in crash reports by using the power granted by section 316.008(1)(k), Florida Statutes?
In sum:
1. Escambia County is not entitled to receive information contained in crash reports from law enforcement agencies prepared pursuant to section316.066, Florida Statutes, based on authority contained in the County's Motor Vehicle Accident Cost Recovery Fee Ordinance.
2. Escambia County is not authorized by section 316.008(1)(k), Florida Statutes, to adopt an ordinance requiring that the county be given access to the information contained in crash reports prepared pursuant to section 316.066, Florida Statutes, prior to the expiration of the 60-day confidentiality period.
According to your letter, Escambia County enacted Ordinance 2007-58 designed to recover "those costs incurred in response, incident assessment, control, containment and abatement services performed by the County Fire-Rescue in response to motor vehicle accidents." The ordinance authorizes imposition of a fee to recover these costs.[1] Under the terms of the ordinance, the County is required to seek the fee from the responsible party's motor vehicle insurance company, the owner of the vehicle, and any other responsible parties.
Question One
Chapter 316, Florida Statutes, is the "Florida Uniform Traffic Control Law."[2] Section 316.002, Florida Statutes, expresses the legislative intent for adopting this law, stating:
"It is the legislative intent in the adoption of this chapter to make uniform traffic laws to apply throughout the state and its several counties and uniform traffic ordinances to apply in all municipalities. The Legislature recognizes that there are conditions which require municipalities to pass certain other traffic ordinances in regulation of municipal traffic that are not required to regulate the movement of traffic outside of such municipalities. Section 316.008 enumerates the area within which municipalities may control certain traffic movement or parking in their respective jurisdictions. This section shall be supplemental to the other laws or ordinances of this chapter and not in conflict therewith. It is unlawful for any local authority to pass or to attempt to enforce any ordinance in conflict with the provisions of this chapter."
Section 316.066, Florida Statutes, provides that the driver of any vehicle involved in a crash "resulting in bodily injury to or death of any person or damage to any vehicle or other property in an apparent amount of at least $500" shall forward a written report of the accident to the Department of Highway Safety and Motor Vehicles or to a traffic records center.[3] However, when the law enforcement officer investigating the crash makes a written report of the crash pursuant to section 316.066(3), Florida Statutes, the driver is relieved of his or her obligation to file a written crash report.[4] The Department of Highway Safety and Motor Vehicles is authorized to prepare and supply a form for the preparation of crash reports and section 316.068, Florida Statutes, requires that every crash report required to be made in writing must be submitted on this form. Crash reports are analyzed and statistical information based on the crash reports is used in determining the number and circumstances of traffic crashes.[5]
Section 316.066(5)(a), Florida Statutes, currently provides in part that
"[c]rash reports that reveal the identity, home or employment telephone number or home or employment address of, or other personal information concerning the parties involved in the crash and that are held by any agency that regularly receives or prepares information from or concerning the parties to motor vehicle crashes are confidential and exempt from s.119.07(1) and s. 24(a), Art. I of the State Constitution for a period of 60 days after the date the report is filed."
The statute makes these reports available on a limited basis:
"Crash reports held by an agency under paragraph (a) may be made immediately available to the parties involved in the crash, their legal representatives, their licensed insurance agents, their insurers or insurers to which they have applied for coverage, persons under contract with such insurers to provide claims or underwriting information, prosecutorial authorities, victim services programs, radio and television stations licensed by the Federal Communications Commission, newspapers qualified to publish legal notices under ss. 50.011 and 50.031, and free newspapers of general circulation, published once a week or more often, available and of interest to the public generally for the dissemination of news. For the purposes of this section, the following products or publications are not newspapers as referred to in this section: those intended primarily for members of a particular profession or occupational group; those with the primary purpose of distributing advertising; and those with the primary purpose of publishing names and other personal identifying information concerning parties to motor vehicle crashes."
Thus, despite the general confidentiality of crash reports, certain local, state or federal agencies, victim services programs, [6] and agents or employees that are authorized to have access to crash reports by law must be granted access in order to facilitate the agency's statutory duties.[7] As a condition precedent to accessing a crash report within the initial 60-day period, an agency or person must insure that information from a crash report made confidential and exempt by section 316.066, Florida Statutes, will not be used for any commercial solicitation of accident victims or knowingly disclosed to any third parties for the purpose of solicitation during the period of time that the information is confidential and exempt.[8] Criminal penalties are imposed for knowing disclosure of such information and for obtaining such information by any person not entitled to obtain such information. Any person who knowingly uses confidential and exempt information in violation of the statute's sworn statement requirement commits a third degree felony.[9]
Section 316.066, Florida Statutes, makes local law enforcement agencies primarily responsible for preparing and forwarding written crash reports to the Department of Highway Safety and Motor Vehicles. It appears that this is the practice in Escambia County.
This office considered a question similar to the one you have presented in Attorney General Opinion 2006-11. In that opinion, the City of Maitland asked whether the city's fire department was authorized under section 316.066, Florida Statutes, to receive a copy of a written crash report in order to request reimbursement from the at-fault driver for a fee assessed by the city. This office recognized that the "right to access public documents is virtually unfettered, save only the statutory exemptions designed to achieve a balance between and informed public and the ability of the government to maintain secrecy in the public interest."[10] In acknowledging this right of the public, this office and the courts construe exceptions to the Public Records Law narrowly and limit their application to their intended purpose.[11] The statute specifically provides that the crash reports are confidential and exempt from the Public Records Law and from the constitutional open government provisions for a 60-day period. The Attorney General Opinion notes that by providing specific exceptions allowing the distribution of these reports to specified individuals and entities, the Legislature has prohibited the distribution of these crash reports to any other entity. Attorney General Opinion 2006-11 concludes that section 316.066, Florida Statutes, does not authorize the release of written crash reports to a municipal fire department for purposes of requesting reimbursement from the at-fault driver in an accident for a fee assessed by the city.
Nothing in section 316.066, Florida Statutes, authorizes local governments to enact legislation in contradiction of the provisions of this statute. While counties are generally authorized pursuant to section 125.01(1), Florida Statutes, to "carry on county government" that power is qualified by and may only be exercised "[t]o the extent not inconsistent with general or special law."
Section 316.066(5)(c), Florida Statutes, recognizes that "[a]ny local, state, or federal agency that is authorized to have access to crash reports by any provision of law shall be granted such access in the furtherance of the agency's statutory duties." You have suggested that Escambia County Ordinance 2007-58 may represent such a "provision of law" and thereby authorize the county to be granted access to crash reports before the expiration of the 60 day period. However, the term "law" or "by law" means an enactment of the State Legislature, not a municipality, county, or any other political body.[12] Thus, an Escambia County ordinance is not a "provision of law" pursuant to section 316.066(5)(c), Florida Statutes, that would entitle the county access to confidential and exempt crash reports.
In sum, it is my opinion that Escambia County is not entitled to receive information contained in crash reports from law enforcement agencies prepared pursuant to section 316.066, Florida Statutes, based on authority contained in the County's Motor Vehicle Accident Cost Recovery Fee Ordinance.
Question Two
You have also asked whether section 316.008(1)(k), Florida Statutes, authorizing the county to require written crash reports may provide the county with authority to access the information contained in crash reports prepared pursuant to section 316.066, Florida Statutes.
As discussed above, the Legislature has stated that:
"Section 316.008 enumerates the area within which municipalities may control certain traffic movement or parking in their respective jurisdictions. This section shall be supplemental to the other laws or ordinances of this chapter and not in conflict therewith. It is unlawful for any local authority to pass or to attempt to enforce any ordinance in conflict with the provisions of this chapter." (e.s.)
Further, section 316.007, Florida Statutes, provides that the provisions of Chapter 316, Florida Statutes, shall be applicable and uniform throughout the state and "no local authority shall enact or enforce any ordinance on a matter covered by this chapter unless expressly authorized." In addition, the scope of section 316.007, Florida Statutes, is qualified and "this section shall not prevent any local authority from enacting an ordinance when such enactment is necessary to vest jurisdiction of violation of this chapter in the local court." Thus, while a local governmental entity may legislate on matters within its jurisdiction pursuant to provisions of the State Uniform Traffic Code, it may not do so in language that would conflict with the state statutory provisions.
In considering the powers of local governments to legislate on subjects controlled by Chapter 316, Florida Statutes, Attorney General Opinion 98-15 concluded that the City of Satellite Beach could not adopt an ordinance permitting the use of skateboards on streets within the city's jurisdiction since such regulation was preempted by section 316.2065(12), Florida Statutes. However, the opinion determined that the city could adopt ordinances regulating the safe and orderly use of skateboards or other toy vehicles on the sidewalks within the city's jurisdiction pursuant to section 316.2065(10), Florida Statutes.
More recently, in Attorney General Opinion 03-58, this office addressed a city's authority to place more restrictive regulations on the operation of golf carts on streets and roads. The proposed regulations included requiring the use of safety belts and prohibiting the operation of such carts by persons under the age of 16 unless accompanied by a licensed driver. Finding that Chapter 316, Florida Statutes, enumerates the safety equipment and other restrictions, such as the age of the operator, that may be applied to golf carts, the opinion concluded that the city was precluded from requiring additional safety equipment or imposing more restrictive operational requirements for golf carts operating within its jurisdiction.
Similarly, in this situation, section 316.066, Florida Statutes, makes information contained in crash reports confidential and exempt from disclosure for a period of 60 days.[13] However, section 316.008, Florida Statutes, in describing the powers of local authorities under Chapter 316, Florida Statutes, states that local authorities, "with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power," may require written crash reports. While Escambia County may adopt an ordinance requiring written crash reports, "with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power," the county has no authority to adopt an ordinance requiring access to the crash reports required by and prepared pursuant to section 316.066, Florida Statutes. Rather, the county would appear to be authorized to adopt local legislation requiring the filing of a county crash report in situations when the accident happens on roads over which the county has exclusive jurisdiction after the county has made the appropriate findings supporting the need for such an ordinance.
In sum, in response to your second question, it is my opinion that Escambia County is not authorized by section 316.008(1)(k), Florida Statutes, to adopt an ordinance requiring that the county be given access to the information contained in crash reports prepared pursuant to section 316.066, Florida Statutes, prior to the expiration of the 60 day confidentiality period.
Sincerely,
Bill McCollum Attorney General
BM/tgh
[1] I would note that you have characterized this charge as a "fee" in the nature of a user fee for the services of Escambia County Fire-Rescue. However, this "fee" is assessed against "the responsible party" in a motor vehicle accident giving it the character of a fine or penalty. Pursuant to Article I, section 18, Florida Constitution, "[n]o administrative agency. . .shall impose a sentence or imprisonment, nor shall it impose any other penalty except as provided by law."
[2] See s. 316.001, Fla. Stat.
[3] See 316.066(1), Fla. Stat.
[4] Id.
[5] Section 316.069, Fla. Stat.
[6] Section 316.003(85), Fla. Stat., defines "victim services programs" as "[a]ny community-based organization whose primary purpose is to act as an advocate for the victims and survivors of traffic crashes and for their families. The victims services offered by these programs may include grief and crisis counseling, assistance with preparing victim compensation claims excluding third-party legal action, or connecting persons with other service providers, and providing emergency financial assistance."
[7] Section 316.066(3)(c), Fla. Stat.
[8] Section 316.066(5)(d), Fla. Stat.
[9] See s. 316.066(6), Fla. Stat.
[10] See Times Publishing Company v. City of St. Petersburg, 558 So. 2d 487, 492 (Fla. 2d DCA 1990).
[11] See Op. Att'y Gen. Fla. 2006-11 and Krischer v. D'Amato, 674 So. 2d 909, 911 (Fla. 4th DCA 1996); Seminole County v. Wood, 512 So. 2d 1000,1002 (Fla. 5th DCA 1987), rev. denied, 520 So. 2d 586 (Fla. 1988).
[12] See, e.g., Grapeland Heights Civic Association v. City ofMiami, 267 So. 2d 321, 324 (Fla. 1972), Broward County v. PlantationImports, Inc., 419 So. 2d 1145 (Fla. 4th DCA 1982), and Ops. Att'y Gen. Fla. 84-51 (1984) (ordinance of a noncharter county is not a "law" within the purview of s. 5(c), Art. II, State Const.), 84-39 (1984) (municipal ordinance is not a "law" within the meaning of s. 8, Art. I, State Const.), and 83-92 (1983).
[13] Section 316.066(5)(a), Fla. Stat.